UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 NOV -1 PM 3: 27

CLERK

BY_____ LTW
DEPUTY CLERK

HARR, LLC, )
)
    Plaintiff, )
)
    v. )   Case No.: 2:18-cv-00218
)
TOWN OF NORTHFIELD, )
)
    Defendant. )

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
(Doc. 15)

Plaintiff HARR, LLC, owner of the Northfield Falls Mobile Home Park ("the Park"), brings this action against Defendant Town of Northfield alleging that the placement of liens upon Plaintiff's property for unpaid electrical bills accrued by Plaintiff's mobile home tenants violates the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause of the Vermont Constitution.[1]

Pending before the court is Defendant's May 8, 2019 motion for judgment on the pleadings. (Doc. 15.) Plaintiff opposed the motion on June 21, 2019. Defendant replied on July 2, 2019, at which time the court took the pending motion under advisement.

Plaintiff is represented by David R. Bookchin, Esq. Defendant is represented by Michael J. Leddy, Esq., and Kevin J. Coyle, Esq.

---

[1] In opposition to Defendant's motion, Plaintiff argues that the placement of liens on its property also violates the Common Benefits Clause of the Vermont Constitution. Because Plaintiff did not allege this claim in the Complaint, the court may not consider it on a motion for judgment on the pleadings. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers[.]") (citations omitted).

## I. The Complaint's Allegations.

Plaintiff is a limited liability corporation that owns the Park located in Northfield, Vermont. Plaintiff leases lots in the Park to tenants, who are permitted to "situate and reside in mobile homes (not owned by [Plaintiff]) in the Park, subject to terms and conditions agreed upon by the respective tenants and [Plaintiff] in a mobile home lot lease agreement, and applicable laws and regulations." (Doc. 1 at 1-2, ¶ 6.)

Defendant operates the Northfield Electric Department ("NED"), which furnishes electrical utilities and services to customers in the towns of Northfield, Moretown, and Berlin, Vermont, including to tenants residing in the Park. NED's operations are governed by Subchapter 4 of Defendant's Town Charter (the "Town Charter"), which provides in relevant part:

> The charges and rates for electric service shall be a lien upon real estate, wherever located, furnished with such service in the same manner and to the same effect as taxes are a lien upon real estate under 32 V.S.A. § 5061. The owner of such property furnished with electric service, wherever located, shall be liable for such charges and rates.

24A V.S.A. § 129C-402(b) (the "Lien Provision").

Plaintiff alleges that in 2015, Christina D. Michaud owned and resided in a mobile home at One Second Street, Lot Thirty-One in the Park; Edward and Wanda Stone (collectively, the "Stones") owned and resided in a mobile home at Thirty-Five First Street, Lot Twenty in the Park; and Gregg Booth and Brandi Brunell owned and resided in a mobile home at Twenty-One Fourth Street, Lot Forty-Five in the Park. In 2016, Marissa and Jason Greene (collectively, the "Greenes") owned and resided in a mobile home at Four First Street, Lot Sixteen in the Park. In 2018, Wayne Skiffington resided in a mobile home at Ninety-Nine Northfield Falls Mobile Park, Lot Five in the Park.[2] The foregoing individuals (collectively, the "Park Residents") owned their mobile homes as their personal property. Their mobile homes were not a fixture of the Park.

---

[2] According to the Complaint, the mobile home in which Mr. Skiffington resided was allegedly owned by Kevin Rogers and/or Mr. Skiffington. (*See* Doc. 1 at 3, ¶ 17.)

2

Each Park Resident submitted an application and was approved as an electrical utility customer of NED. Thereafter, NED provided electrical utilities and services to the Park Residents' mobile homes for which they were billed on a monthly basis. Plaintiff alleges that it was neither a co-applicant nor a guarantor of the Park Residents' NED accounts. At an unspecified time, the Park Residents each became delinquent on his, her or their NED electric account. Thereafter, NED continued to provide the Park Residents with electric utilities and services and allowed their delinquent account balances to accrue.

On or about January 29, 2015, after Ms. Michaud vacated her mobile home and removed it from the Park, Defendant placed a lien in the amount of $540.77 on Plaintiff's property in the Park for the electric utilities and services NED provided to Ms. Michaud at her mobile home. On or about October 29, 2015, after the Stones vacated their mobile home, Defendant placed a lien in the amount of $575.82 on Plaintiff's property in the Park for the electric utilities and services NED provided to the Stones at their mobile home.

On or about January 29, 2016, Defendant placed a lien in the amount of $588.90 on Plaintiff's property in the Park for the electric utilities and services NED provided to Mr. Booth at the mobile home in which Mr. Booth and Ms. Brunell resided. In 2016, NED approved and opened a new electrical account for Ms. Brunell and continued to provide electric services to the mobile home occupied by Mr. Booth and Ms. Brunell.

On or about July 27, 2016, after the Greenes vacated and sold their mobile home to a new owner in the Park, Defendant placed a lien in the amount of $1,042.07 on Plaintiff's property in the Park for the electric utilities and services NED provided to the Greenes at their mobile home. On or about October 29, 2018, after Mr. Skiffington vacated and abandoned the mobile home where he resided, Defendant placed a lien in the amount of $285.70 on Plaintiff's property in the Park for the electric utilities and services NED provided to Mr. Skiffington at his former mobile home.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"In deciding a Rule 12(c) motion, [the court] employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks omitted). The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged approach[.]" *Id.* at 161 (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017); *see also Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) ("[I]ssues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss[.]").

### B. Whether Plaintiff Plausibly States a Claim Under the Equal Protection Clause of the Fourteenth Amendment (Count II).

In Count II of the Complaint, Plaintiff alleges that Defendant's Town Charter "creates two classes of property owners who lease their property to tenants: 1) property owners whose tenants pay their NED bills on time; and 2) property owners whose tenants are delinquent on their NED bills." (Doc. 1 at 5, ¶ 33.) Plaintiff contends that Defendant "singles out property owners whose tenants are delinquent on their NED bills as a class that the Town can burden with liens on their real property" and that Defendant has "no rational basis justifying the creation of these classes of property owners who are being held accountable for the debts of third parties[.]" *Id.* at 5, ¶ 34.

4

Defendant responds that the Town Charter does not distinguish between property owners whose tenants pay their NED bills on time and those whose tenants do not, but rather distinguishes between landlords and tenants in setting forth a Lien Provision that is rationally related to a legitimate government purpose of ensuring debt collection for public utilities. Plaintiff does not dispute Defendant's assertion that the rational-basis test applies to Plaintiff's equal protection claim. *See Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) ("We have made clear . . . that, where 'ordinary commercial transactions' are at issue, rational basis review requires deference to reasonable underlying legislative judgments.") (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938)).

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320. With regard to rational basis review, the Second Circuit has held:

> [I]t is very difficult to overcome the strong presumption of rationality that attaches to a statute. We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50 [ ] (1966), because the problem could have been better addressed in some other way, *Mourning* [*v. Family Publ'ns Serv., Inc.,*] 411 U.S. [356], 378 [(1973)] or because the statute's classifications lack razor-sharp precision, *Dandridge* [*v. Williams*, 397 U.S. 471,] 485 [(1970)]. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance* [*v. Bradley*], 440 U.S. [93], 110-11 [(1979)]. To succeed on a claim such as this, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 111 [].
>
> So long as they do not burden fundamental rights or single out suspect classifications, lawmakers are free to engage in "rational speculation unsupported by evidence." [*F.C.C. v.*] *Beach Communications*, 508 U.S. [307,] 315 [(1993).]

5

*Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997). Nonetheless,

> [E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause; it provides guidance and discipline for the legislature, which is entitled to know what sorts of laws it can pass; and it marks the limits of our own authority. In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.

*Romer v. Evans*, 517 U.S. 620, 632 (1996); *see also Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013) ("[W]hile rational basis review is indulgent and respectful, it is not meant to be 'toothless.'").

In order to state a plausible equal protection claim, "a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality that applies to government classifications." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49-50 (2d Cir. 2018) (footnote omitted). "A court is not confined to the particular rational or irrational purposes that may have been raised in the pleadings" and may "hypothesize a legitimate, rational governmental purpose[.]" *Id.* at 50 (citations omitted); *see also Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356, 367 (S.D.N.Y. 2017), *aff'd sub nom. Progressive Credit Union*, 889 F.3d at 40 (holding that "[w]hen neither the complaint nor the non-moving party's opposition negate 'any reasonably conceivable state of facts that could provide a rational basis' for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted") (alteration in original) (citation omitted).

To support its equal protection claim, Plaintiff relies upon *Winston v. City of Syracuse*, 887 F.3d 553 (2d Cir. 2018), a case in which a tenant asserted an equal protection challenge to the City of Syracuse's policy of terminating water service to tenants whose landlords failed to pay their water bills. The tenant alleged that the City's policy "create[d] two classes of tenant water users—tenants whose landlords have delinquent water bills and tenants whose landlords are current in their payments." *Id.* at

562. Because these two classes of tenants were similarly situated and because there was no rational basis for the City's differential treatment, the Second Circuit found the City's policy violated the Equal Protection Clause:

> We agree with the Fifth, Sixth, Seventh, and Ninth Circuits that requiring a tenant without any legal obligation for a landlord's unpaid bill to pay that bill to retain or restore water service fails rational basis review. The tenants of non-delinquent and delinquent landlords are similar in all relevant respects in this situation. First, they rent their homes and cannot open water accounts in their own name. Second, their landlords have the legal obligation to pay the water bills to the City; neither class of current tenants possesses a *legal* obligation to pay the unpaid water bill. As a result, the City's policy of shutting off water to collect debts "divorces itself entirely from the reality of legal accountability for the debt involved," and "penalize[s] . . . not the debtor but an innocent third party with whom the debtor contracted."

*Id.* at 563-64 (citations omitted).

Relying on *Winston*, Plaintiff contends that the Town Charter's Lien Provision similarly creates a "collection scheme . . . that divorces itself entirely from the reality of legal accountability for the debt involved" by requiring property owners to pay for the electric bills of their delinquent tenants, even where the property owner has no legal obligation for those debts. *Id.* at 562 (citation omitted). Plaintiff concedes that the cases it cites concern tenants who are forced to bear the burden of their landlords' debts, but nonetheless argues that the inverse situation, whereby landlords are forced to pay the debts accrued by their tenants, is also unconstitutional.

The court accepts as true Plaintiff's allegation that it is not a party to the Park Residents' contracts with NED for electric services. However, Plaintiff nonetheless possesses a legal duty to ensure those services are provided to its tenants. The Vermont Mobile Home Parks Act imposes on mobile home park owners the following warranty of habitability:

> In any lot rental agreement, the park owner shall be deemed to covenant and warrant to deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean, and fit for human habitation. This warranty requires the park owner to provide adequate and reliable utility services, including safe electrical service, potable water, and sewage

7

disposal to a location on each lot from which these utilities can be connected to the mobile home.

10 V.S.A. § 6262(a). Under Vermont law, if a park owner "fails to comply with the obligation of habitability" after notice of a violation, a tenant is entitled to statutory remedies. 10 V.S.A. §§ 6263(a)(1)-(2). Vermont law mandates that "[n]o park owner may willfully cause, directly or indirectly, the interruption or termination of any utility service to a mobile home except for temporary interruptions for necessary repairs." 10 V.S.A. § 6245(a). Vermont law further requires mobile home park owners to address utility charges in their leases. *See* 10 V.S.A. § 6236(e)(1) ("All mobile home lot leases shall contain . . . [r]ental and utility charges and other reasonable incidental service charges, if any."). As Defendant points out, both the Vermont Supreme Court as well as numerous other courts[3] have concluded that this type of statutory scheme is "intended to secure payment for [services] used by tenants through a claim on the landlord." *Rand v. Marshall*, 78 A. 790, 791 (Vt. 1911).

Thus, unlike the tenant in *Winston*, who was truly an "unobligated third party[,]" Plaintiff here was legally obligated to furnish the electric services at issue to Park Residents. *Winston*, 887 F.3d at 564 (citation omitted). In this respect, the case is analogous to *Chatham v. Jackson*, 613 F.2d 73 (5th Cir. 1980). There, a landlord claimed that a municipal practice of terminating the landlord's water service when a tenant failed to pay his or her bills violated the Equal Protection Clause. Even though the water service account was opened in the tenant's name, the Court of Appeals for the Fifth

---

[3] *See, e.g., Dunbar v. City of New York*, 251 U.S. 516, 518 (1920) (finding landlord gave implied consent to imposition of lien for tenants' unpaid water bills because city charter provided for such a lien); *Puckett v. City of Muldraugh*, 403 S.W.2d 252, 255 (Ky. 1966) (holding that property owner benefits from municipal water service provided to his tenants, and therefore "[i]f he requests this service or accepts it, he impliedly agrees to pay the service charge as provided in the ordinance"); *City of East Grand Forks v. Luck*, 107 N.W. 393, 395 (Minn. 1906) ("The theory of the charter is that the obligation on the part of the owner rests upon contract, which is implied by the fact that he connects his premises with the city water or electric light system and permits the occupant to use the same."); *Sherwood Court v. Borough of South River*, 683 A.2d 839, 843 (N.J. App. Div. 1996) (holding that where landlord had knowledge of lien statute "and authorized electrical connections to the tenants of their buildings[,] [t]hat is sufficient to create an implied contract and validate the lien").

8

Circuit found that the landlord could be held liable for the tenant's debts without violating the Equal Protection Clause. It reasoned that "an owner's property is benefitted by the utility services, and it is eminently reasonable for the city to impose a lien and threaten to terminate service to the benefitted property when the service is not paid for." *Id.* at 80. As a result, "the imposition of a lien, and the resulting right to terminate water and sewer services to the owner of property until charges accruing during his ownership are paid, constitute a collection scheme that bears a substantial relation to the city's important and valid objective[]" of "remain[ing] financially sound through the collection of sums owed it for water and sewer services." *Id.* The Fifth Circuit observed that key differences between tenants and landlords supported this outcome:

> Tenants generally have few self-help remedies against their landlords, but the obverse is not usually true. The landlord commonly draws up the lease and can provide in it for the eventuality of the tenant's nonpayment of utility bills by collecting a deposit or through other security clauses. The lease can give the owner the right to evict for nonpayment of utility bills. If a multi-unit building is involved, we assume that the property owner initially dictates whether the premises will be served through a single meter or through separate meters and thus exercises substantial control over the amount of potential lien liability from each meter.

*Id.* at 80-81.

In this case, Defendant has a legitimate government interest in ensuring collection of payment for services its electric utility, NED, provided to Park Residents. Distinguishing between property owners whose tenants timely pay their electrical bills and property owners whose tenants are delinquent is rationally related to that legitimate objective as it targets owners who have failed to ensure payment for services that benefit the owner's property. The Town Charter's Lien Provision thus does not "separate its debt collection scheme from the actual legal obligation for the unpaid [electrical] bills." *Winston*, 887 F.3d at 564. Plaintiff is not without recourse because the Vermont Mobile Home Parks Act authorizes a mobile home park owner to "retain all or a portion of [a tenant's] security deposit for . . . nonpayment of utility or other charges which the leaseholder was required to pay directly to the park owner or to a utility[.]" 10 V.S.A.

9

§ 6244(b)(3); *see also Sherwood Court*, 683 A.2d at 845 (observing that property owners "are in the best position to address the concern of unpaid electric charges in their own leasing arrangements with their tenants.").

Because the distinction created by the Town Charter's Lien Provision between property owners whose tenants are delinquent in payment of their electrical bills and property owners whose tenants are not is rationally related to a legitimate government purpose, Defendant's motion for judgment on the pleadings as to Plaintiff's equal protection claim is GRANTED.

### C. Whether Plaintiff Plausibly States a Claim for Inverse Condemnation Under the Takings Clause of the Vermont Constitution (Count IV).

In Count IV, Plaintiff alleges that the liens Defendant placed on Plaintiff's property "amount[] to an appropriation of [its] interest in the Park" for which Defendant has not paid compensation. (Doc. 1 at 7, ¶ 45.) In its opposition, Plaintiff clarifies that it "submits [this] claim under the Vermont Constitution[.]" (Doc. 19 at 12.) Defendant argues for dismissal of Count IV on the grounds that the placement of the five liens upon Plaintiff's property does not constitute a physical or regulatory taking.

The Vermont Constitution provides that "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." VT. CONST. ch. I, art. 2. The Vermont Supreme Court has recognized that "the federal and Vermont Constitutions use virtually the same test for takings review[.]" *Ondovchik Family Ltd. P'ship v. Agency of Transp.*, 2010 VT 35, ¶ 14, 187 Vt. 556, 564, 996 A.2d 1179, 1184 (citation omitted). That court thus borrows from federal law in evaluating takings claims under the Vermont Constitution. *Id.* The United States Supreme Court has held that:

> Our precedents stake out two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes. First, where [the] government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation. A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. . . . Outside these two relatively narrow categories . . . , regulatory takings challenges

10

are governed by the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, [] (1978).

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (emphasis in original) (citation omitted).

Plaintiff does not allege that Defendant has physically invaded Plaintiff's property, nor does it allege that Defendant has deprived Plaintiff of all economically beneficial use of that property. Although Plaintiff contends that factual development is necessary to determine whether the Lien Provision of the Town Charter "substantially advance[s]" the legitimate interests of Defendant, citing *Agins v. City of Tiburon*, 447 U.S. 255 (1980), in 2005 the Supreme Court abrogated *Agins*, holding that the "'substantially advances' formula minted in *Agins* . . . prescribes an inquiry in the nature of a due process, not a takings, test, and . . . it has no proper place in our takings jurisprudence." *Lingle*, 544 U.S. at 540.

To the extent that Plaintiff claims a regulatory taking, this type of taking is confined to "regulatory actions that are functionally equivalent to the classic taking in which [the] government directly appropriates private property or ousts the owner from his domain[,]" with the inquiry focusing on "the severity of the burden that [the] government imposes upon private property rights." *Lingle*, 544 U.S. at 539 (citing *Penn Cent.*, 438 U.S. at 124). "[A] regulatory taking occurs where 'government regulation of private property [is] so onerous that its effect is tantamount to a direct appropriation or ouster.'" *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088-89 (9th Cir. 2015) (quoting *Lingle*, 544 U.S. at 537). "[T]he test for how far [i]s 'too far' require[s] an '*ad hoc*' factual inquiry. That inquiry require[s] considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015) (citing *Penn Cent.*, 438 U.S. at 104).

In the instant case, the liens filed against Plaintiff's property have the effect of clouding title and reducing the fair market value of Plaintiff's property by the amount of the liens. *See Republic of Arg. v. City of New York*, 250 N.E.2d 698, 702 (N.Y. 1969)

(recognizing that the "imposition of a lien . . . affect[s] the property indirectly by reducing the sum [the owner] could realize on a sale to a subsequent purchaser"). The economic impact factor, however, favors Defendant because the Supreme Court has held that mere "diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993); *see also Penn Cent.*, 438 U.S. at 131 (noting that courts "uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking.'").

With regard to Plaintiff's reasonable investment-backed expectations, this factor similarly favors Defendant. In choosing to rent its property to individuals with mobile homes, Plaintiff subjected itself to a statutory scheme that imposes economic burdens, including the requirement that Plaintiff provide "adequate" and "reliable" electrical service to its tenants. 10 V.S.A. § 6262(a). The Supreme Court has "consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 528-29 (1992). For this reason, "[a mobile home park owner] cannot reasonably expect that its property will be continually unencumbered by government regulation[.]" *Rancho de Calistoga*, 800 F.3d at 1090.

In analyzing the final factor, courts examine whether the state action "amounts to a physical invasion or appropriation of property or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 264 (2d Cir. 2014) (citations and internal quotation marks omitted). The Town Charter authorizes the placement of a lien upon a property furnished with electricity to enable Defendant to collect payment for essential services provided by its utility. The placement of liens "does not interfere in any way with the present uses" of the Park, *Penn Cent.*, 438 U.S. at 136, and Plaintiff retains "the fundamental incidents of ownership, including the right to possess the property, exclude others from it, alienate the property and continue to

12

use it for residential and recreational purposes[.]" *Chioffi v. City of Winooski*, 676 A.2d 786, 790 (Vt. 1996) (citation omitted). The Lien Provision of the Town Charter is therefore a regulatory action that "adjusts the benefits and burdens of economic life" in order to ensure the provision of essential services "to promote the common good." *Calloway*, 761 F.3d at 265.

Accepting the facts alleged in the Complaint as true, the placement of liens upon real estate to recover unpaid electrical bills does not constitute a regulatory action that is "so onerous that its effect is tantamount to a direct appropriation or ouster[.]" *Lingle*, 544 U.S. at 537. Because Plaintiff fails to state a plausible claim for inverse condemnation in violation of the Vermont Constitution's Takings Clause, Defendant's motion for judgment on the pleadings as to Count IV is GRANTED.

### D. Whether Plaintiff Plausibly States a Claim Under the Due Process Clause of the Fourteenth Amendment (Count III).

Plaintiff alleges Defendant violated substantive due process by requiring Plaintiff to assume the debts of its tenants "in a manner not based upon legal accountability for those debts." (Doc. 1 at 6, ¶ 40.) Defendant seeks dismissal of Plaintiff's substantive due process claim because it arises from the same conduct and seeks the same relief as Plaintiff's takings and equal protection claims. Alternatively, Defendant argues that Plaintiff fails to state a substantive due process claim because Defendant's act of placing liens upon Plaintiff's property has a rational relationship to a legitimate governmental objective.

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property[.]" U.S. CONST., amend. XIV, § 1. To state a substantive due process claim, Plaintiff must allege that (1) it had a "valid property interest" and that (2) Defendant "infringed on that property right in an arbitrary or irrational manner." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007). "Substantive due process requires only that economic legislation be supported by a legitimate legislative purpose furthered by a rational means." *In re Chateaugay Corp.*, 53 F.3d 478, 486-87 (2d Cir. 1995) (internal quotation marks omitted).

13

Substantive due process "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005); *see also Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 514 n.2 (2d Cir. 2014) ("[C]ourts should not use a generalized notion of substantive due process when the Constitution provides an explicit source of protection against the conduct alleged."). Rather, "the scope of substantive due process is very limited." *Gregory v. Inc. Vill. of Ctr. Island*, 2015 WL 5093623, at *9 (E.D.N.Y. Aug. 28, 2015); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (noting that the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended").

Because Plaintiff alleges that Defendant violated its substantive due process rights by "attempting to collect debts of its tenants in a manner not based upon legal accountability for those debts" (Doc. 1 at 6, ¶ 40), Count III arises from the same governmental action and seeks the same relief as Plaintiff's takings and equal protection claims. In such circumstances, a substantive due process claim must be dismissed. *See Rancho de Calistoga*, 800 F.3d at 1093 ("[Plaintiff's] theory of its due process claim . . . relates to conduct squarely covered by the Takings Clause. Such an overlapping theory dooms the substantive due process claim."); *UMB Bank, N.A. v. City of Winooski, Vt.*, 2018 WL 4080384, at *15 (D. Vt. Aug. 27, 2018) (dismissing a substantive due process claim upon finding that it was "'subsumed in [Plaintiff's] more particularized' takings claim") (quoting *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005)).

Dismissal is warranted for the further reason that Plaintiff fails to plausibly plead that Defendant's placement of liens on Plaintiff's property is not rationally related to a legitimate governmental purpose. The Town Charter's Lien Provision ensures that Defendant is able to collect money owed for electricity furnished to a property by its utility. Courts have recognized that similar measures taken to secure payment for public services do not violate substantive due process. *See Dunbar v. City of New York*, 251 U.S. 516, 518 (1920) (holding that no substantive due process violation occurred when a

14

landlord was charged with tenants' water bill as a lien on the landlord's property even when tenants agreed in their lease to pay such charges); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1478 (6th Cir. 1993) (finding that a city's policy of holding landlords liable for delinquent water bills of their tenants did not violate substantive due process because it was "a reasonable regulation aimed at keeping the water system financially solvent"); *Chatham*, 613 F.2d at 78 (holding that a city's practice of terminating water service to a landlord when the tenant's bills were unpaid did not violate substantive due process because it was not arbitrary "to coerce an owner into paying for services that benefitted his property"); *Vajk v. City of Iron River, Mich.*, 2011 WL 101740, at *7 (W.D. Mich. Jan. 12, 2011) (holding that the imposition of a lien on the real estate served for nonpayment of water services incurred by a prior owner did "not implicate specific constitutional guarantees, [did] not shock the conscience," and was "rationally related to the [c]ity's legitimate interest in obtaining payment for public services"); *Baird v. Lake Santee Reg'l Waste & Water Dist.*, 945 N.E.2d 711, 716 (Ind. Ct. App. 2011) ("It is well settled that a municipality's lien against property for utility fees is not a deprivation or taking of property and that, therefore, the requirements of due process are inapplicable.").

Because a substantive due process claim is not available where it duplicates other more particularized constitutional claims, and because Plaintiff cannot plausibly allege that the placement of liens on its property for the Park Residents' unpaid electrical bills fails to rationally serve a legitimate governmental purpose, Plaintiff's substantive due process claim fails as a matter of law. The court therefore GRANTS Defendant's motion for judgment on the pleadings as to Plaintiff's substantive due process claim.

### E. Whether Plaintiff Plausibly States a Claim for a Declaratory Judgment (Count I).

In Count I, Plaintiff seeks "a declaratory judgment that the liens created by the Town Charter and asserted against the Park by the Town are unenforceable and unconstitutional" (Doc. 1 at 5, ¶ 31) pursuant to 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57. Defendant argues that because the Declaratory Judgment Act does not create an

15

independent cause of action, Count I must be dismissed in the event the court grants judgment on the pleadings with regard to Plaintiff's other claims. The court agrees.

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The United States Supreme Court "has held that the operation of the Declaratory Judgment Act is procedural only[,]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (internal quotation marks omitted), and "does not extend the jurisdiction of the federal courts[.]" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (internal quotation marks and citation omitted). As a result, the Declaratory Judgment Act "does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The [Declaratory Judgment Act] . . . merely offers an additional remedy to litigants.") (emphasis omitted).

Because the court has granted judgment on the pleadings in favor of Defendant on Plaintiff's substantive claims, Plaintiff's request for declaratory relief in Count I must be DISMISSED. *See Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017) (holding that "because no other federal claims survived the pleading stage, the District Court did not have subject matter jurisdiction to hear [plaintiff's] argument for declaratory relief").

## LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). However, "[l]eave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted[.]" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal citations omitted). Because it is not clear that further pleading will cure the deficiencies in the Complaint, the court does not affirmatively grant leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend because "better

16

pleading will not cure" the deficiencies in the complaint). Plaintiff may nonetheless petition the court for leave to amend within thirty (30) days of the date of this Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules. In doing so, Plaintiff must explain why its proposed amendments are not futile.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is GRANTED. (Doc. 15.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1st day of November, 2019.

Christina Reiss, District Judge
United States District Court